LUIS CURET,

                              Plaintiff,

        v.                                              Case No. 25-cv-6-pp

TONIA ROZMARYNOSKI, *et al.*,

                              Defendants.

**ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT ON EXHAUSTION GROUNDS (DKT. NOS. 39, 47) AND DISMISSING CASE WITHOUT PREJUDICE**

Plaintiff Luis Curet, who is incarcerated at Columbia Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983. The court screened the complaint and allowed the plaintiff to proceed on claims that the defendants violated his constitutional rights. Dkt. No. 17 at 9-10. On March 30, 2026, defendants Zakary Korpita, Rachel Matushak, Amy Potapenko, Tonia Rozmarynoski and Hannah Utter ("the State Defendants") filed a motion for summary judgment on exhaustion grounds. Dkt. No. 39. On the same day, defendant Jasmine Granius, who is represented by separate counsel, filed her own motion for summary judgment on exhaustion grounds. Dkt. No. 47. The day after the defendants filed their motions, the court ordered that the plaintiff's responses were due by April 29, 2026. Dkt. No. 51. On April 20, 2026, the court granted the plaintiff's motion for extension of time to respond to the defendants' summary judgment motions and ordered that his responses were due by May 29, 2026. Dkt. No. 55. On May 28, 2026, the court

1

denied without prejudice the plaintiff's motion to appoint counsel and extended the deadline for the plaintiff to respond to the defendants' motions for summary judgment until June 19, 2026. Dkt. No. 60 at 4. The court ordered that if the plaintiff did not respond to the defendants' summary judgment motions by June 19, 2026, it would consider the motions as unopposed and decide them without input from the plaintiff. Id. at 5.

The court sent its order to the plaintiff at Columbia Correctional Institution, where the Department of Corrections Offender Detail shows the plaintiff has been confined since April 30, 2025. https://appsdoc/wi.gov/lop/details/detail. The court has no reason to think the plaintiff did not receive the May 28, 2026 order. The court has not received from the plaintiff timely responses to the defendants' motions for summary judgment, but on July 8, 2026, the court received from the plaintiff a declaration in which he avers that he objects to those motions. Dkt. No. 63. The declaration is dated July 6, 2026; the plaintiff provides no explanation for why he submitted it more than two weeks after the summary judgment response deadline, nor does he request an extension of time. The court will not consider the plaintiff's untimely declaration in resolving the defendants' motions for summary judgment. See Jovanovic v. In-Sink-Erator Div. of Emerson Electric Co., 210 F.3d 894, 897 (7th Cir. 2000) (no abuse of discretion in denying untimely response when party given extensions and missed deadlines); see also Civil Local Rule 56(b)(2) (providing that all materials filed in opposition to summary judgment must be filed "within 30 days of service of the motion); Hill v. Thalacker, 210 F. App'x

513, 515 (7th Cir. 2006) (noting that district courts have discretion to enforce procedural rules against unrepresented litigants).

Even if the court were to consider the plaintiff's untimely filing, nothing in that filing creates a genuine issue of material fact with respect to the issues raised in the defendants' motions for summary judgment. As the court said it would do in its previous order, the court will consider the motions as unopposed and will decide them without input from the plaintiff. This order grants the defendants' motions for summary judgment on exhaustion grounds and dismisses the case without prejudice.

## I.    Facts

The court allowed the plaintiff to proceed on the following claims based on events that allegedly occurred at Green Bay Correctional Institution on December 6, 2023: (1) an Eighth Amendment excessive force claim against defendant Rozmarynoski for allegedly unnecessarily using OC mace and a taser on the plaintiff; (2) an Eighth Amendment medical care claim against defendants Potapenko, Granius, Matushak, Rozmarynoski and Utter for allegedly denying the plaintiff a shower and medical care after the incident with Rozmarynoski; and (3) Eighth and Fourth Amendment claims against defendant Korpita for allegedly making lewd comments about the plaintiff's body and genitalia during a strip search before the incident with Rozmarynoski. Dkt. No. 17 at 9-10.

The State Defendants were employed by the Wisconsin Department of Corrections (DOC) at Green Bay during the events described in the complaint. Dkt. No. 41 at ¶2. Granius worked as a nurse at Green Bay. Dkt. No. 50 at ¶3.

On February 21, 2024, the plaintiff was transferred from Green Bay to the Wisconsin Resource Center (WRC). Dkt. No. 41 at ¶4. On October 3, 2024, the institution complaint examiner's (ICE) office received complaint WRC-2024-14662, in which the plaintiff stated:

> I need camera footage on 12-6-23 into 2024 and even while I been here from unit 15 and 17.
>
> I was maced and tased by tonia in Green Bay. I need body camera footage as well as the cells and wing I was in 300, 200, & 600 wing.
>
> I need records this is PREA complaint I was violated by CO's in every way and it need to be investigated. They cut off my clothes and had me naked in the cell.

Id. at ¶5; Dkt. No. 50 at ¶¶9-10. Although the plaintiff submitted this grievance while he was at the WRC, it was forwarded to the ICE office at Green Bay to be processed because the claims in the complaint took place at Green Bay. Dkt. No. 41 at ¶6.

In WRC-2024-14662, the plaintiff did not ask to file a late complaint or give a reason why he filed his complaint past the fourteen-day deadline for submitting inmate complaints. Dkt. No. 41 at ¶7. On October 14, 2024, Green Bay ICE DeGroot rejected the complaint under Wis. Admin. Code §DOC 310.07(2), observing that the plaintiff had failed to file his complaint within fourteen days, did not request that the complaint be accepted as untimely for

4

good cause and presented no proof that he had been denied the use of the inmate complaint process. Id. at ¶8; Dkt. No. 50 at ¶15.

On October 22, 2024, the ICE's office received the plaintiff's appeal of the rejected complaint, in which he said that he could not file a timely complaint because he was on restrictions and was not allowed supplies to file a complaint until February 21, 2024. Dkt. No. 41 at ¶9. The reviewing authority dismissed the plaintiff's appeal, determining that his complaint was properly rejected as untimely under Wis. Admin. Code §DOC 310.10(6). Id. at ¶10; Dkt. No. 50 at ¶17. On November 21, 2024, the corrections complaint examiner's (CCE) office received a complaint appeal regarding WRC-2024-14662. Dkt. No. 41 at ¶11. The next day, the CCE returned the plaintiff's appeal, stating that under Wis. Admin. Code §DOC 310.12(4)(b), the CCE's office does not review rejected complaints. Id. at ¶12. The plaintiff did not submit any other inmate complaints regarding the claims at issue in this lawsuit. Id. at ¶13.

On October 5, 2024, the plaintiff called the "777 PREA report line" stating that he had been beaten and raped at Green Bay Correctional institution in December 2023. Dkt. No. 41 at ¶14. Three days later, investigators followed up with the plaintiff based on his report. Id. at ¶15. He stated that he had been placed on clinical observation and was strip searched on December 6, 2023, when he was not suicidal. Id. He also alleged that he was tased, beaten and sprayed with OC spray. Id. The plaintiff also mentioned an incident that occurred on January 6, 2024, where staff cut off his clothes. Id. at ¶16. Upon review of the plaintiff's incident reports, staff believed he was

referring to an incident on January 11, 2024. Id. On November 20, 2024, the plaintiff called the 777 PREA report line asking to follow up on an incident at Green Bay Correctional Institution. Id. at ¶17. The plaintiff's PREA complaints both were closed as non-PREA, meaning that the allegation of sexual misconduct did not meet the federal definitions of sexual abuse or sexual harassment because they were related to a staff-assisted strip search. Id. at ¶18.

## II.   Analysis

### A.   Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); Ames v. Home Depot U.S.A., Inc., 629 F.3d 665, 668 (7th Cir. 2011). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." See Anderson, 477 U.S. at 248. A dispute over "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

### B.   Discussion

The State Defendants contend that the plaintiff did not exhaust his administrative remedies. Dkt. No. 40 at 6. They first state that complaint WRC-2024-14662 could exhaust only the plaintiff's excessive force claim against Rozmarynoski (based on the statement "I was maced and tased") because it

does not say anything about being denied a shower or medical care, or about officers making lewd comments during a strip search. Id. The State Defendants also contend that complaint WRC-2024-14662 properly was rejected as untimely because the plaintiff had submitted it more than nine months after the fourteen-day deadline and did not request that it be accepted late. Id. The State Defendants contend that the plaintiff's conclusory statement in his inmate complaint that "this is a PREA complaint" did not exempt the complaint from the filing deadline because the only facts that could have supported a PREA claim ("they cut of my clothes and had me naked in my cell") do not relate to the plaintiff's claim against Korpita for allegedly making lewd comments during the strip search. Id. at 7.

Defendant Granius contends that the plaintiff did not exhaust his administrative remedies because complaint WRC-2024-14662 was properly rejected as untimely. Dkt. No. 48 at 7. Granius also contends that even if the inmate complaint had been timely, it did not provide proper notice of the plaintiff's claims against her because the plaintiff did not state that he was denied a shower or medical care. Id. at 8.

The Prison Litigation Reform Act (PLRA) states that an incarcerated individual cannot assert a cause of action under federal law "until such administrative remedies as are available are exhausted." 42 U.S.C. §1997e(a); see also Woodford v. Ngo, 548 U.S. 81, 93 (2006) (holding that the PLRA requires proper exhaustion of administrative remedies). Exhaustion requires that an incarcerated person comply with the rules applicable to the grievance

process at his institution. <u>Pozo v. McCaughtry</u>, 286 F.3d 1022, 1025 (7th Cir. 2002). This requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." <u>Porter v. Nussle</u>, 534 U.S. 516, 532 (2002). The objective of §1997e(a) is to permit the institution's "administrative process to run its course before litigation begins." <u>Dole v. Chandler</u>, 438 F.3d 804, 809 (7th Cir. 2006) (quoting <u>Cannon v. Washington</u>, 418 F.3d 714, 719 (7th Cir. 2005)); <u>see also</u> <u>Kaba v. Stepp</u>, 458 F.3d 678, 684 (7th Cir. 2006). The Seventh Circuit applies a "strict compliance approach to exhaustion" and expects incarcerated individuals to adhere to "the specific procedures and deadlines" established by the institution's policy. <u>Dole</u>, 438 F.3d at 809; <u>see also</u> <u>Hernandez v. Dart</u>, 814 F.3d 836, 842 (7th Cir. 2016) (citations omitted).

The "Inmate Complaint Review System" (ICRS) within the Wisconsin prisons is the administrative remedy available to individuals with complaints about prison conditions or the actions of prison officials. Wis. Admin. Code §DOC 310.01(2)(a). Before an incarcerated individual may commence a civil action, he must exhaust all administrative remedies the DOC "has promulgated by rule." Wis. Admin. Code §DOC 310.05. The ICRS is available for individuals to "raise issues regarding policies, living conditions, or employee actions that personally affect the inmate or institution environment." Wis. Admin. Code §DOC 310.06(1).

To use the ICRS, an incarcerated person must file a complaint with the ICE within fourteen days after the occurrence giving rise to the complaint. Wis.

Admin. Code §DOC 310.07(2). After reviewing and acknowledging each complaint in writing, the ICE either rejects the complaint or sends a recommendation to the "appropriate reviewing authority," who may recommend that the complaint be affirmed or dismissed in whole or in part. Wis. Admin. Code §§DOC 310.10(9) & 310.10(12). The ICE may reject a grievance filed late without good cause. Wis. Admin. Code §DOC 310.10(6)(e). An incarcerated individual may appeal a rejected grievance within ten days to the reviewing authority, who shall only review the basis for the rejection. Wis. Admin. Code §DOC 310.10(10). The reviewing authority's decision on the rejection is final. Id.

The undisputed facts establish that the only inmate complaint the plaintiff submitted related to his claims in this case is WRC-2024-14662. The plaintiff submitted that complaint on October 3, 2024, which was ten months after the December 3, 2023 incident described in the complaint. The ICE appropriately rejected WRC-2024-14662 because the plaintiff filed it more than fourteen days after the incident and because he did not state good cause for filing it late. "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." Pozo v. McCaughtry, 286 F.3d 1022, 1025 (7th Cir. 2002). The plaintiff failed to exhaust his administrative remedies based on his failure to file a timely inmate complaint. See id. (incarcerated individual who did not file a timely appeal failed to exhaust administrative remedies).

In addition to WRC-2024-14662 being properly rejected as untimely, the complaint raised only the issue of the plaintiff's excessive force claim against Rozmarynoski based on the December 3, 2023 incident. Complaint WRC-2024-14662 did not allege facts to put prison officials on notice of the plaintiff's other claims. "The PLRA exhaustion requirement ensures that 'a prison has received notice of, and an opportunity to correct, a problem' before being drawn into litigation." Jackson v. Esser, 105 F.4th 948, 958-59 (7th Cir. 2024) (quoting Turley v. Rednour, 729 F.3d 645, 650 (7th Cir. 2013)). Assuming that an incarcerated individual has taken all the administrative steps, his "complaint will suffice for exhaustion purposes if it provides notice to the prison of 'the nature of the wrong for which redress is sought.'" Id. at 959 (quoting Schillinger v. Kiley, 954 F.3d 90, 995 (7th Cir. 2020)). The plaintiff's failure to assert any facts related to his Eighth Amendment medical care claims against defendants Matushak, Rozmarynoski, Utter, Apolapenko and Granius, and his Eighth and Fourth Amendment claims against Korpita, means that he did not exhaust his administrative remedies as to those claims. See id.

The plaintiff failed to exhaust his administrative remedies. The court will grant the defendants' motions for summary judgment on exhaustion grounds and dismiss the case without prejudice. See Ford v. Johnson, 362 F.3d 395, 401 (7th Cir. 2004).

## III.   Conclusion

The court **GRANTS** the defendants' motions for summary judgment on exhaustion grounds. Dkt. Nos. 39, 47.

The court **ORDERS** that this case is **DISMISSED WITHOUT PREJUDICE**. The clerk will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. See Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. See Fed. Rule of App. P. 4(a)(5)(A).). If the plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the outcome of the appeal. If the plaintiff seeks to proceed on appeal without prepaying the appellate filing fee, he must file a motion *in this court*. See Fed. R. App. P. 24(a)(1). The plaintiff may be assessed a "strike" by the Court of Appeals if it concludes that his appeal has no merit. If the plaintiff accumulates three strikes, he will not be able to file a case in federal court (except a petition for *habeas corpus* relief) without prepaying the full filing fee unless he demonstrates that he is in imminent danger of serious physical injury. Id.

Under certain circumstances, a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Rule 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. See Fed. R. Civ. P. 6(b)(2). Any motion under Rule 60(b) must be filed within a reasonable time, generally no more than one year

11

after the entry of the judgment. The court cannot extend this deadline. <u>See</u> Fed. R. Civ. P. 6(b)(2).

The court expects parties to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated in Milwaukee, Wisconsin this 10th day of July, 2026.

BY THE COURT:

**HON. PAMELA PEPPER**
**Chief United States District Judge**